**Wolfgang Hirczy DE MIÑO, Appellant,**

v.

**Edward P. SHERIDAN, Appellee.**

**Nos. 01–03–00794–CV, 01–04–00099–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 12, 2004.

Wolfgang Hirczy De Mino, Bellaire, TX, for Appellant.

Daniel C. Perkins, Assistant Attorney General, Austin, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

In these accelerated, interlocutory appeals, appellant, Wolfgang Hirczy de Miño, challenges the trial court's orders denying de Miño's application for a temporary injunction and granting a plea to the jurisdiction in favor of appellee, Edward Sheridan, Provost of the University of Houston (UH), on de Miño's claims asserted against Sheridan in his official capacity.

De Miño, appearing pro se, presents six issues [1] for our review. He contends that the trial court erred in granting Sheridan's plea to the jurisdiction because section 111.33 of the Texas Education Code [2] and the Uniform Declaratory Judgments Act (the DJA) [3] waive UH's governmental immunity, and thus Sheridan's immunity, for causes of action authorized by law. Alternatively, he contends that no statutory waiver of immunity is required for an individual to bring a suit against State officials based on their unauthorized, illegal, or unconstitutional acts. As a further alternative, he contends that UH waived its governmental immunity, and that of Sheridan, by its conduct. De Miño also contends that the trial court erred in granting Sheridan's plea to the jurisdiction and in denying de Miño's claims for equitable relief because he had adequately pleaded facts sufficient to support his claims for violations of his rights under the Texas Constitution. He further contends that the trial court erred in dismissing his claims without affording him an opportunity to amend his pleadings.

Sheridan contests our jurisdiction to consider de Miño's interlocutory appeal of the trial court's order granting the plea to the jurisdiction on the ground that Sheridan is not a "governmental unit," as that term is defined by the Civil Practice and Remedies Code.[4] We conclude that we

---

1. Although de Miño states numerous issues in the "Issues Presented" section of his brief, he argues his issues under six major headings. Accordingly, we address his contentions as issues one through six.

2. TEX. EDUC.CODE ANN. § 111.33 (Vernon 2002).

3. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–.011 (Vernon 1997 & Supp.2004).

4. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2004).

have jurisdiction over de Miño's interlocutory appeal, and we affirm the trial court's orders.

## Factual and Procedural Background

In the fall of 2001, Sheridan refused to approve the renewal of de Miño's lecturing[5] contract with UH after it had been approved for renewal by W. Andrew Achenbaum, the Dean of UH's College of Liberal Arts and Social Sciences. After de Miño filed a wrongful termination suit against UH and Achenbaum, asserting federal civil rights claims as well as a claim for an alleged breach of an employment agreement, a federal district court ordered UH to employ de Miño for the Spring 2002 semester. However, on UH's motion for summary judgment, the federal court subsequently dismissed de Miño's claims.[6]

De Miño filed the instant suit in January 2003 against Sheridan for defamation and "retaliation." In his original petition, de Miño asserted his defamation claim against Sheridan "in [Sheridan's] individual capacity for wrongful conduct that falls outside the scope of his employment" as Provost for UH. De Miño based his defamation claim on statements made by Sheridan in a March 2002 affidavit submitted in the previous federal lawsuit. In the affidavit, Sheridan explained that his decision not to renew de Miño's contract had been based on information that Sheridan had received from other UH administrators that de Miño had been accused of sexual harassment by one of his female students and

had admitted to having had an affair with the student making the allegation of harassment.[7] De Miño based his retaliation claim on his allegation that, in making the allegedly defamatory statements contained in the March 2002 affidavit, Sheridan had "retaliated against [de Miño] by impugning his integrity and by knowingly making false statements of fact calculated to ruin [de Miño's] reputation." De Miño accused Sheridan of making the statements in the affidavit "to teach [de Miño], and all others who oppose Sheridan's autocratic leadership of [UH] and stand up for their rights, a lesson by making an example of [de Miño]" for de Miño's having filed a lawsuit against UH.

In his "First Supplemental Petition," de Miño expanded his pleadings to "assert all causes of actions [sic] against [Sheridan]" in his official capacity" as UH's Provost. In a "Second Supplemental Petition," de Miño raised additional claims against Sheridan for violation of de Miño's rights to "free speech" and "redress of grievances" under the Texas Constitution.[8]

De Miño then filed a "Third Supplemental Petition" in which he "clarifie[d]" that he was not asserting any tort claims against Sheridan in Sheridan's official capacity. De Miño also raised (1) a "takings" claim,[9] (2) a claim that Sheridan had violated de Miño's "constitutional liberty interest in his professional reputation," [10] and (3) a claim for relief in the form of a

---

5. De Miño was a UH political science lecturer.

6. *See De Miño v. Achenbaum*, No. 02–20772, 81 Fed.Appx. 819 (5th Cir. Nov. 21, 2003) (per curiam).

7. Although de Miño denied that he had sexually harassed the student, he admitted that he had met the student, who was married, while

she was a student in his class and that "she became his girlfriend, and that they had plans to marry, buy a house, and have children together."

8. *See* TEX. CONST. art. I, §§ 8, 27.

9. *Id.* art. I, § 17.

10. *Id.* art. I, § 19.

declaration[11] that, in making the allegedly defamatory statements, Sheridan had violated de Miño's constitutional rights.

Additionally, de Miño filed an application seeking a temporary injunction to prevent Sheridan from repeating or republishing the allegedly defamatory statements and to order Sheridan to provide de Miño with access to UH's internet website so as to afford de Miño "an opportunity to post documentary evidence pertaining to the dispute between [de Miño] and [UH]" and "controvert [UH's] allegations concerning him."

Sheridan filed a plea to the jurisdiction, based on governmental immunity, seeking to dismiss de Miño's claims raised against Sheridan in his official capacity. Sheridan also filed a response to de Miño's application for a temporary injunction, in which Sheridan argued that the application should be denied because de Miño had not demonstrated either a probable right of recovery or the likelihood of probable injury pending trial.[12] By separate orders, the trial court granted Sheridan's plea to the jurisdiction as to all claims asserted against him in his official capacity and denied de Miño's application for a temporary injunction.[13]

**Appellate Jurisdiction**

■ By supplemental letter brief filed with this Court before the submission of this case, Sheridan contested our jurisdiction to consider de Miño's interlocutory appeal of the trial court's order granting the plea to the jurisdiction. An appeal may be taken from an interlocutory order that grants or denies a plea to the jurisdiction filed by "a governmental unit" such as UH. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2004). Sheridan argues that, because the trial court granted a plea to the jurisdiction in favor of Sheridan, and not in favor of a "governmental unit," de Miño is not entitled to pursue an interlocutory appeal from the trial court's ruling.

It is a well-established and generally accepted principle of law that a suit against a government employee in his official capacity is, in all respects, a suit against the governmental unit. *See, e.g., Terrell ex rel. Estate of Terrell v. Sisk*, 111 S.W.3d 274, 280 (Tex.App.-Texarkana 2003, no pet.); *Tex. Dep't of Health v. Rocha*, 102 S.W.3d 348, 353 (Tex.App.-Corpus Christi 2003, no pet.); *Denson v. T.D.C.J.-I.D.*, 63 S.W.3d 454, 460 (Tex. App.-Tyler 1999, pet. denied); *Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.). Here, the trial court granted Sheridan's plea to the jurisdiction only as to claims asserted against Sheridan in his official capacity as an employee of UH, a governmental unit. Thus, the trial court's ruling was, in effect, the equivalent of a ruling granting a plea to the jurisdiction in favor of UH.[14]

11. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–.011.

12. *See Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993).

13. The record indicates that de Miño also filed a "Forth [sic] Supplemental Petition." However, the trial court's order granting the plea to the jurisdiction excludes the claims presented in that petition from the trial court's ruling. Thus, we do not address those claims.

14. Moreover, to read section 51.014(a)(8) to apply as narrowly as is suggested by Sheridan would require parties in all similar circumstances to postpone a review of a trial court's grant or denial of a plea to the jurisdiction concerning governmental employees until after the conclusion of the parties' litigation of any claims raised against the governmental employee in that employee's individual capacity. Such a narrow reading would potentially result in a waste of judicial resources if a

Accordingly, we hold that we have jurisdiction over de Miño's interlocutory appeal, and we address the merits of de Miño's arguments.

## Plea to the Jurisdiction

In his first, second, and third issues, de Miño argues that the trial court erred in granting Sheridan's plea to the jurisdiction because (1) both section 111.33 of the Texas Education Code and the DJA waive UH's governmental immunity, and thus Sheridan's immunity, for causes of action authorized by law; (2) no statutory waiver of immunity is required for an individual to bring a suit against State officials based on their unauthorized, illegal, or unconstitutional acts; and (3) UH waived its governmental immunity, and that of Sheridan, by its conduct. In his fifth issue, de Miño argues that the trial court erred in granting Sheridan's plea to the jurisdiction because de Miño adequately pleaded facts sufficient to support his claims for violations of his rights under the Texas Constitution.

As a general rule, the State of Texas and its governmental units are immune from suits for money damages unless the legislature has expressly consented to the suit. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001). UH is a governmental unit generally immune from tort liability, except when the legislature has specifically waived that immunity. TEX. EDUC.CODE ANN. §§ 111.01–.02 (Vernon 2002 & Supp. 2004); TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(D); *Freedman v. Univ. of Houston*, 110 S.W.3d 504, 506 n. 5 (Tex.

App.-Houston [1st Dist.] 2003, no pet.). Moreover, a suit against government employees in their official capacities is, in all respects, a suit against the State; thus, employees sued in their official capacities, such as Sheridan here, are shielded by governmental immunity. *See Hohman*, 6 S.W.3d at 777.[15]

A governmental unit may contest a trial court's authority to determine the subject matter of the cause of action by filing a plea to the jurisdiction. *See Reyes v. City of Houston*, 4 S.W.3d 459, 461 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). In the absence of a waiver of governmental immunity, a court has no subject matter jurisdiction to entertain a suit against a governmental unit. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003). When a trial court learns that it lacks jurisdiction to hear a cause, the court must dismiss the cause and refrain from rendering a judgment on the merits. *Freedman*, 110 S.W.3d at 507.

When reviewing a trial court's ruling on a plea to the jurisdiction, we consider the facts alleged by the plaintiff and, to the extent relevant to the jurisdictional issues, any evidence submitted by the parties. *Whitley*, 104 S.W.3d at 542. We review a trial court's disposition of a plea to the jurisdiction under a *de novo* standard of review. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Reese v. City of Hunter's Creek Vill.*, 95 S.W.3d 389, 391 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

reviewing court later determined that the trial court's ruling on the plea was improper.

15. Throughout this opinion, when we refer to Sheridan's "immunity," we are referring to his immunity from suit in his official capacity,

which is derivative of UH's governmental immunity. *See Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.).

**Statutory Waiver of Immunity**

In his first issue, de Miño argues that the "sue and be sued" language of section 111.33 of the Education Code constitutes a valid legislative waiver of UH's and Sheridan's immunity from suit on all causes of action authorized by law and, thus, the trial court erred in granting Sheridan's plea to the jurisdiction. Section 111.33 reads as follows:

> The board [of regents] has the power *to sue and be sued* in the name of the University of Houston. Venue shall be in either Harris County or Travis County. The University shall be impleaded by service of citation on the president or any of its vice presidents. Nothing in this section shall be construed as granting legislative consent for suits against the board, the University of Houston System, or its component institutions and entities except as authorized by law.

TEX. EDUC.CODE ANN. § 111.33 (Vernon 2002) (emphasis added).

In *Freedman*, we held that section 111.33 did not waive UH's immunity from suit on claims for breach of contract. 110 S.W.3d at 506. De Miño argues that, because he has not asserted contractual claims against Sheridan, section 111.33 acts as a statutory waiver of Sheridan's immunity. However, the language of section 111.33 broadly states that it does not waive UH's immunity from any suit "except as authorized by law." TEX. EDUC. CODE ANN. § 111.33. Thus, we hold that section 111.33 does not waive Sheridan's immunity from suit.

De Miño also asserts, in his first issue, that the DJA "waives immunity to suit against a governmental official or entity when a litigant seeks a declaration of his rights, or alleged violation of his rights, by a governmental official or entity and also authorizes ancillary injunctive relief."

The purpose of the DJA is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM.CODE ANN. § 37.002 (Vernon 1997). De Miño relies on section 37.006 of the DJA, which provides that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." *Id.* § 37.006 (Vernon 1997).

A party can maintain a suit against a governmental unit to obtain an equitable remedy or to determine its legal rights without legislative permission. *Fed. Sign v. Tex. So. Univ.*, 951 S.W.2d 401, 404 (Tex.1997). However, the DJA does not extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). The Texas Supreme Court has consistently held that private parties may not circumvent a governmental unit's immunity from suit merely by characterizing a suit for damages as a declaratory judgment claim. *Id.* at 856 (citing *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 842 (1958)). Moreover, a declaratory judgment action is not appropriate when a plaintiff's cause of action is mature and enforceable in a pending suit that involves the same parties and the same issues as alleged in the declaratory judgment action. *Tex. A & M Univ. Sys. v. Luxemburg*, 93 S.W.3d 410, 425 (Tex.App.-Houston [14th Dist.] 2002, pet. denied).

Here, although de Miño stated in his pleadings that he was not asserting tort claims against Sheridan in Sheridan's official capacity, de Miño sought to have the trial court render a "declaratory judgment" that Sheridan, in his official capacity, had made false and defamatory state-

ments concerning de Miño's relationship with a student. Because such a declaration would, in fact, constitute a ruling as a matter of law on the tort claims de Miño had asserted against Sheridan in his individual capacity, it is not within the proper scope of an action for declaratory relief. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.002; *IT–Davy*, 74 S.W.3d at 855–56; *Luxemburg*, 93 S.W.3d at 425. Rather, de Miño's claim for declaratory relief merely recasts his defamation claims. Accordingly, we hold that the DJA does not waive Sheridan's immunity from suit.

We overrule de Miño's first issue.

### Requirement of Statutory Waiver of Immunity

Alternatively, in his second issue, de Miño argues that the trial court erred in granting Sheridan's plea to the jurisdiction because de Miño was not required to establish the existence of a statutory waiver of governmental immunity as he asserted a claim for declaratory relief and claims based on various provisions of the Texas Constitution seeking recovery of monetary damages and equitable relief for Sheridan's alleged "unauthorized or illegal acts" in making the allegedly defamatory statements. Likewise, in his fifth issue, de Miño argues that the trial court's decision to grant Sheridan's plea to the jurisdiction was erroneous because de Miño "adequately pleaded facts supporting claims of [Texas] constitutional violations."

#### Claim for Declaratory Relief

The Texas Supreme Court has held that private parties may seek declaratory relief against government officials who allegedly act without legal or statutory authority. *IT–Davy*, 74 S.W.3d at 855; *see Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432 (Tex.1994) (suit challenging state officials' construction of compulsory school-attendance law). Such suits are not considered

to be "suits against the State" because they seek to compel government officials to act within their official capacity and do not attempt to subject the governmental unit to liability. *IT–Davy*, 74 S.W.3d at 855. Although certain claims for declaratory relief asserted against government officials may not implicate the governmental immunity doctrine, here, as we have held, de Miño's declaratory claim does not fall within the scope of the DJA and was properly dismissed by the trial court.

#### "Takings" Claim

With regard to his constitutional claims, de Miño first argues that the trial court improperly dismissed his claim against Sheridan in his official capacity because no statutory waiver of immunity was necessary to permit de Miño to pursue his claim for adequate compensation under the "takings" clause of the Texas Constitution. *See* TEX. CONST. art. I, § 17. The Texas Constitution provides, in pertinent part, as follows:

> No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money....

*Id.* Governmental immunity does not shield governmental units from claims for compensation under the "takings" clause. *Little–Tex*, 39 S.W.3d at 598.

Here, de Miño argues that, through Sheridan's allegedly defamatory statements, de Miño was deprived of employment in the academic community. However, de Miño directs us to no authority supporting his contention that his personal interest in employment at UH or elsewhere constitutes a "property" right for purposes of the "takings" clause. *See*

*Bates v. Tex. State Tech. Coll.,* 983 S.W.2d 821, 826 n. 8 (Tex.App.-Waco 1998, pet. denied) (noting that "property" refers to real property and not to interest in continued employment). Moreover, de Miño has not alleged, nor does the record indicate, that his personal interest in employment was or could have been "taken, damaged or destroyed for or applied to *public* use." TEX. CONST. art. I, § 17 (emphasis added).

### Due Course of Law Claim

De Miño also argues that the trial court erred in granting the plea to the jurisdiction on his claims "alleging a deprivation of his liberty interest" in his professional reputation because, under the "due course of law" provision of the Texas Constitution, he did not need to establish a waiver of governmental immunity. The due course of law guarantee of the Texas Constitution provides as follows:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land.

TEX. CONST. art. I, § 19. Texas courts have traditionally followed contemporary federal due process interpretations of procedural due process issues. *Univ. of Tex. Med. Sch. at Houston v. Than,* 901 S.W.2d 926, 929 (Tex.1995) (holding that medical student had constitutionally protected liberty interest in graduate education); *see* U.S. CONST. amend. XIV. The Texas Supreme Court has held that, "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal requirements of due process must be satis-

fied." *Id.* at 930 (citing *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975)).

In his pleadings, de Miño asserted a cause of action for deprivation of his "constitutional liberty interest in his professional reputation and standing in the community" under Article I, section 19. However, all of de Miño's claims are based on his allegation that Sheridan defamed him in retaliation for de Miño's pursuit of a federal lawsuit against UH. De Miño did not seek, as a remedy for Sheridan's allegedly defamatory statements, due process in the form of either an administrative hearing or reinstatement to his lecturing position.[16] Nor is de Miño entitled to recover monetary damages under his "due course of law" claim. *See Jackson v. Houston Indep. Sch. Dist.,* 994 S.W.2d 396, 400–01 (Tex. App.-Houston [14th Dist.] 1999, no pet.).

As the United States Supreme Court has observed, "The words 'liberty' and 'property' as used in the Fourteenth Amendment do not ... single out reputation ... for special protection over and above other interests that may be protected by state law." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Reputation alone, apart from some more tangible interests such as employment, does not constitute either "liberty" or "property" by itself sufficient to invoke protections of procedural due process. *Id.* 424 U.S. at 701, 96 S.Ct. at 1161.

Based on the record presented, we find nothing in de Miño's pleadings that alters the nature of his claims from anything other than ordinary defamation claims.[17]

---

16. We make no determination as to whether such claims would have been barred, under a theory of *res judicata,* by de Miño's prior federal lawsuit.

17. We note that *pro se* litigants are held to the same standards as attorneys and must comply with all applicable and mandatory rules of pleading and procedure. *See, e.g., Kindley v. State,* 879 S.W.2d 261, 264 (Tex.App.-Houston [14th Dist.] 1994, no pet.).

### "Open Courts" Claim

De Miño also argues that he is not required to plead a statutory waiver of immunity because the "open courts" provision of the Texas Constitution guarantees his right to pursue a remedy for Sheridan's alleged wrongful conduct. The Texas Constitution provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation shall have a remedy by due course of law." TEX. CONST. art. I, § 13.

 The Texas Supreme Court has held that the "open courts" provision "applies only to *statutory* restrictions of a cognizable common law cause of action." *Fed. Sign,* 951 S.W.2d at 410 (emphasis added) (quoting *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 499 (Tex.1995)). A court's ruling that merely upholds established sovereign immunity law does not violate the "open courts" provision of the Texas Constitution because a citizen does not have a "cognizable common law cause of action" against the sovereign. *See Fed. Sign,* 951 S.W.2d at 410. Here, de Miño does not direct this Court to any legislative act that abridges a cognizable common law claim; thus, his "open courts" challenge is without merit.

### "Freedom of Speech" and "Redress of Grievances" Claims

Finally, de Miño argues that the trial court's grant of Sheridan's plea to the jurisdiction was improper because de Miño was not required to prove a waiver of immunity to proceed on his claim that, by making the allegedly defamatory statements, Sheridan had retaliated against de Miño's constitutional right of "freedom of speech." *See* TEX. CONST. art. I, § 8. De Miño also argues that he is entitled to pursue a claim for "redress of grievances." *See* TEX. CONST. art. I, § 27. Section 8 of the Texas Constitution reads, in part, as follows:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech of the press.

TEX. CONST. art. I, § 8. Section 27, also known as the "free assembly" provision, reads as follows:

> The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance.

TEX. CONST. art. I, § 27.

The Texas Supreme Court has held that "there is no implied private right of action for damages arising under the free speech and free assembly sections of the Texas Constitution." *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 147 (Tex.1995). De Miño argues that, because he sought equitable relief as an alternative to monetary damages, he may pursue a private cause of action against Sheridan, in his official capacity, under the "free speech" and "right of redress" provisions of the Texas Constitution. The equitable relief requested in de Miño's pleadings consisted of a request that Sheridan, in his official capacity, be enjoined from repeating and be ordered to retract the allegedly defamatory statements.

 However, de Miño asserted his constitutional claims against Sheridan in Sheridan's *official* capacity, not his individual capacity. An *ultra vires* suit, based on allegedly unconstitutional actions by an employee or official of a governmental unit, may not be maintained against an official in his official capacity; such a suit

may only be brought against an official in his individual capacity. *See Nueces County v. Ferguson,* 97 S.W.3d 205, 219 n. 18 (Tex.App.-Corpus Christi 2002, no pet.); *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 597–98 (Tex.App.-Austin 1991, writ denied); *Bagg v. Univ. of Tex. Med. Branch at Galveston,* 726 S.W.2d 582, 584–85 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.). Nor may a plaintiff seek equitable relief in an attempt to control an official acting within the scope of the official's legal authority. *King v. Tex. Dep't of Human Servs.,* 28 S.W.3d 27, 33 (Tex. App.-Austin 2000, no pet.). Thus, de Miño's claims asserting causes of action under the free speech and redress of grievances provisions of the Texas Constitution are without merit.

■ As noted above, generally, the State, its governmental units, and its governmental employees sued in their official capacities are immune from suit unless the legislature has expressly consented to the suit. *Gen. Servs. Comm'n.,* 39 S.W.3d at 593; *Hohman,* 6 S.W.3d at 777. Here, we hold that none of the declaratory or constitutional claims asserted by de Miño relieved him of the requirement of establishing the existence of a statutory waiver of UH's governmental immunity to bring his suit.

Accordingly, we overrule de Miño's second and fifth issues.

**Waiver by Conduct**

■ In his third issue, de Miño argues, alternatively, that the trial court erred in granting Sheridan's plea to the jurisdiction because Sheridan's official immunity, if any, was waived by the conduct of UH, the Texas Attorney General's Of-

fice, and Sheridan himself in the trial court below. Specifically, de Miño asserts that, by accepting legal representation from the Texas Attorney General's Office and by filing a counterclaim for attorney's fees, Sheridan waived his immunity.

Here, given the nature of de Miño's claims asserted against Sheridan as Provost of UH, the State was required to indemnify and the Attorney General's Office was required to defend Sheridan. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 104.001 (Vernon Supp.2004) ("In a cause of action based on conduct described in [this chapter], the state shall indemnify ... an employee ... or any other officer of a state agency, institution, or department ...."); *see id.* § 104.004(a) (Vernon 1997) ("The attorney general shall defend a public servant ... in a cause of action covered by this chapter.").[18]

■ It is evident that the purpose of Chapter 104 is not to waive immunity of government employees but to provide for their defense and indemnification, and we do not construe it as a statutory waiver of immunity. *See Montana v. Patterson,* 894 S.W.2d 812, 815 (Tex.App.-Tyler 1994, no writ). Accordingly, we hold that, by appearing as counsel for Sheridan in this case, the Attorney General's Office did not waive Sheridan's immunity from suit with regard to de Miño's claims asserted against Sheridan in his official capacity.

De Miño also argues that UH and the Attorney General's Office appeared on Sheridan's behalf and, consequently, waived their governmental immunity. However, the record indicates that the only parties to the proceedings in the trial

18. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 104.002(a)(3) (Vernon 1997) ("[T]he State is liable for indemnification under this chapter only if the damages are based on an act or omission by the person in the course of the person's office, employment, or contractual service on behalf of the ... institution ... and if ... indemnification is in the interest of the state as determined by the attorney general or his designee.").

court were de Miño and Sheridan. Thus, we hold that de Miño's contention that UH and the Attorney General's Office appeared as parties is without merit.

De Miño further argues that Sheridan pursued a counterclaim against de Miño for attorney's fees and that, by doing so, Sheridan waived his immunity by invoking the jurisdiction of the trial court. *See Reata Construction Corp. v. City of Dallas*, 2004 WL 726906, at *3 (holding that, by filing suit for damages, "a governmental entity waives immunity from suit for any claim that is incident to, connected with, arises out of, or is germane to the suit or controversy brought by the State," including counterclaims). The record indicates that Sheridan did not file a separate pleading designated as a "counterclaim" and did not set forth any allegations or elements of a cause of action against de Miño. *See* TEX.R. CIV. P. 97. However, in his original answer, Sheridan prayed generally for the trial court to award him "costs of court, attorney's fees, and such other relief as the Court deems appropriate."

To address de Miño's argument that Sheridan waived his immunity by invoking the trial court's jurisdiction, we must first determine whether Sheridan's general prayer for relief constituted a counterclaim. As one court has observed:

> The question of whether an answer sets up a counterclaim or is merely defensive must be determined by the facts alleged, and not by the name given the plea or by the particular form of the prayer for relief. A test for making the determination is to inquire whether the defendant could have maintained a suit to enforce the claim before suit was brought by the plaintiff. If the defendant could have maintained such an independent suit, the claim will be regarded as a setoff or

counterclaim. If the suit could not have been maintained, it is a defensive plea. *Flukinger v. Straughan*, 795 S.W.2d 779, 787 (Tex.App.-Houston [14th Dist.] 1990, writ denied).

Here, it is apparent that Sheridan's general prayer for relief, including attorney's fees, could not have been maintained in a separate lawsuit. In his prayer, Sheridan set forth no cause of action, legal theory, or facts that would entitle him to recover attorney's fees. Therefore, we conclude that his general prayer for costs of court and attorney's fees did not constitute a counterclaim, and we hold that Sheridan did not invoke the jurisdiction of the trial court by making this general prayer.

We hold that Sheridan, UH, and the Attorney General's Office did not, by their conduct, waive Sheridan's immunity, and we overrule de Miño's third issue.

 A trial court simply has no subject matter jurisdiction to entertain a suit against a governmental unit absent a waiver of governmental immunity, and, when it learns that it lacks jurisdiction to hear a cause, the trial court must dismiss the cause. *Freedman*, 110 S.W.3d at 507. Accordingly, we hold that the trial court did not err in granting Sheridan's plea to the jurisdiction.

### Temporary Injunction

 In his fourth issue, de Miño challenges the trial court's denial of his application for a temporary injunction. In his application, de Miño requested that the trial court order Sheridan not to repeat or republish the allegedly defamatory statements and to permit de Miño to present "documentary evidence pertaining to the dispute" between de Miño and UH on UH's internet website.

 An applicant for a temporary injunction must establish that he has a

probable right to the relief sought and that he will suffer a probable injury in the interim, pending a trial on the merits. *Walling v. Metcalfe,* 863 S.W.2d 56, 57 (Tex.1993); *City of Friendswood v. Registered Nurse Care Home,* 965 S.W.2d 705, 707 (Tex.App.-Houston [1st Dist.] 1998, no pet.). The decision to grant or to deny a temporary injunction lies within the sound discretion of the trial court, and we will not reverse that decision absent an abuse of discretion. *Walling,* 863 S.W.2d at 58; *CRC–Evans Pipeline Int'l, Inc. v. Myers,* 927 S.W.2d 259, 262 (Tex.App.-Houston [1st Dist.] 1996, no writ). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985).

Here, de Miño's argument that the trial court erred in denying his application for a temporary injunction is based on his argument that his claim for equitable relief was "not jurisdictionally barred." Because, as we have held, the trial court properly granted Sheridan's plea to the jurisdiction concerning all claims asserted by de Miño against Sheridan in Sheridan's official capacity, we hold that de Miño has not demonstrated that he has a probable right of recovery on such claims. *See Walling,* 863 S.W.2d at 57. Therefore, we hold that the trial court did not abuse its discretion in denying de Miño's application for a temporary injunction.

We overrule de Miño's fourth issue.

### Opportunity to Amend

In his sixth issue, de Miño contends that the trial court erred in granting Sheridan's plea to the jurisdiction without affording de Miño an opportunity to cure any deficiencies in his pleadings.

After de Miño had filed his original petition, Sheridan filed special exceptions, which the trial court granted. De Miño subsequently filed three supplemental petitions. Although Sheridan filed special exceptions to de Miño's "Third Supplemental Petition," the trial court did not rule on these special exceptions. Instead, the trial court signed an order that set a deadline for de Miño to file "amended or supplemental pleadings as to jurisdictional issues." That same order provided that de Miño would be permitted to file additional pleadings after the deadline upon "good cause shown, and with leave of this Court."

Following the trial court's order setting the pleading deadline, de Miño filed a "Motion for Reconsideration" of the trial court's ruling, in which he sought to have the trial court "cancel" the deadline. However, the record indicates that de Miño did not obtain a ruling on his motion for reconsideration. Nor did de Miño seek leave of the trial court to amend or supplement his pleadings after the deadline had passed and before the trial court granted Sheridan's plea to the jurisdiction. Thus, we conclude that de Miño has not preserved any error on this issue for our review. *See* TEX.R.APP. P. 33.1(a).

Accordingly, we overrule de Miño's sixth issue.

### Conclusion

We affirm the orders of the trial court. All pending motions are denied.